IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALEX ORTIZ, :
:
    Petitioner :
: CIVIL NO. 4:07-CV-2007
:
v. : Hon. John E. Jones III
:
:
CRAIG APKER, *et al.*, :
:
    Respondents :

## **MEMORANDUM**

July 21, 2010

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Alex Ortiz ("Petitioner") or ("Ortiz"), who presently is confined at the Brooklyn Metropolitan Detention Center ("MDC Brooklyn") in Brooklyn, New York, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241.[1] At the time of filing, Ortiz was an inmate at the Low Security Correctional Institution Allenwood ("LSCI Allenwood") in White Deer, Pennsylvania. He alleges that the United States Parole

---

[1]On April 14, 2009, Ortiz filed a Notice with the Court indicating that he had been released and was living at a private address in New York, New York. However, a search of his name on the Federal Bureau of Prisons ("BOP") Inmate Locator as of the date of this Memorandum reveals that he currently is in the custody of the BOP at MDC Brooklyn and has a projected release date of November 6, 2010. *See* BOP Inmate Locator, available at http://www.bop.gov/iloc2/LocateInmate.jsp.

Commission ("Commission")'s action in re-imposing a term of special parole after revoking his original term violates the controlling precedent in the Third Circuit set forth in *Fowler v. United States Parole Commission*, 94 F.3d 835 (3d Cir. 1996). For the reasons set forth below, the Petition will be granted, and this matter will be remanded to the United States Parole Commission for further proceedings.

**I.    Factual Background**

On January 20, 1984, Ortiz was sentenced by the United States District Court for the Southern District of New York to a term of imprisonment of ten (10) years, to be followed by a ten (10) year special parole term.[2] (*See* Doc. 7-3 at 4[3], Sentence Monitoring Computation Data.) Ortiz was sentenced following his conviction for distributing and possessing with intent to distribute a schedule I narcotic drug. (*See id.*) He began serving the ten (10) year special parole term on March 19, 1998, and was to remain under special parole supervision until March 18, 2008. (*See id.* at 6, Certificate of Special Parole.)

In a Notice of Action dated November 5, 1999, the Commission found that,

---

[2]Special parole was a statutory creation that was implemented in 1970 as an additional penalty for all drug offenses and was mandatory in all such cases until the Sentencing Reform Act replaced it with "supervised release." *See Fowler*, 94 F.3d at 839. It is imposed by a sentencing court in addition to a prison term, and upon its revocation, the violator's new term of imprisonment is not reduced by the time spent on special parole. *Id.* at 839, 837 (quoting 21 U.S.C. 841(c)).

[3]Citations to page numbers refer to the page number on the CM/ECF electronic record.

based on his admission, Ortiz had violated the conditions of his release as set forth in the following charges: "Charge No. 1 - Use of Dangerous and Habit Forming Drugs. Charge No. 2- Law Violation: Disorderly Conduct. Charge No. 3- Violation of Special Condition (DAPS)." (*See id.* at 8, 11/5/99 Notice of Action.) Consequently, the Commission revoked Ortiz' special parole, ordered that he receive no credit for the time accumulated while on special parole, *i.e.* street time, and that he continue to serve to presumptive parole on December 13, 2000 after serving sixteen (16) months. (*See id.*) The Commission further ordered the conversion of Ortiz' special parole term to a regular term of imprisonment with eligibility for parole under 18 U.S.C. § 4208(a). (*See id.*)

On December 5, 2000, the Commission issued a notice of Action vacating the portion of its November 5, 1999 Notice that had converted the special parole term to a regular parole term/term of imprisonment. (*See id.* at 11, 12/5/00 Notice of Action.) The Notice stated that this decision was "[b]ased on the Commission's determination that the decision in Johnson v. United States, 120 S. Ct. 1795 (2000) invalidates prior lower court decision mandating the conversion of a special parole term after its revocation." (*See id.*) The Commission subsequently issued a Certificate of Parole reparoling Ortiz to his special parole term as of December 13, 2000, and providing that he was to remain on supervision until August 15, 2009. (*See id.* at 12-14,

3

12/13/00 Certificate of Parole.)

On May 29, 2001, Ortiz agreed to the Commission's disposition of parole violations based on the following charges: Use of Dangerous and Habit Forming Drugs; Failure to Submit to Drug Testing; and Violation of Special Condition (DAPS). (*See id.* at 15-17, Notice to Alleged Parole, Special Parole, or Mandatory Release Violator Eligibility for Expedited Revocation Procedure.) In accepting the Commission's decision, which was to revoke special parole, provide no credit for time spent on special parole, and reparole after sixteen (16) months, Ortiz waived his right to a revocation hearing. (*See id.*) Following his acceptance, the Commission formalized its decision in a Notice of Action dated June 8, 2001. (*See id.* at 19-20, 6/8/01 Notice of Action.) When Ortiz was reparoled for the second time on August 22, 2002, his new full term date was December 23, 2009, such that he had lost about three and one-half months of street time. (*See id.* at 22-23, 8/22/02 Certificate of Parole.)

On April 15, 2003, the Commission issued a warrant charging Ortiz with violations based on illegal drug use and failing to report to his probation officer as directed, and specifically, having absconded from supervision as of January 28, 2003. (*See id.* at 25-26, Warrant Application.) Ortiz was not arrested on the warrant until over two years later, on March 15, 2005. (*See id.* at 27-30, Summary Report of a

4

Preliminary Interview.) Ortiz again accepted the Commission's expedited revocation proposal pursuant to which special parole was revoked, he received no credit for time spent on special parole, and he was to be reparoled after fourteen (14) months. (*See id.* at 31, 6/20/05 Response to Expedited Revocation Proposal.) The Commission formalized its decision in a Notice of Action dated July 7, 2005. (*See id.* at 32-34.) When Ortiz was reparoled for the third time on May 13, 2006, his new full term date was July 14, 2012. (*See id.* at 35-37, 5/13/06 Certificate of Parole.)

On February 9, 2007, the Commission issued a warrant charging Ortiz with two separate violations of the special drug aftercare condition as well as use of dangerous and habit forming drugs. (*See id.* at 38-39, Warrant Application.) On July 11, 2007, Ortiz again accepted the Commission's expedited revocation proposal pursuant to which special parole was revoked, he received no credit for time spent on special parole, and he was to be reparoled after sixteen (16) months. (*See id.* at 40, Response to Expedited Revocation Proposal.) The Commission formalized its decision in a Notice of Action dated August 22, 2007. (*See id.* at 44-46, 8/22/07 Notice of Action.)

## II. Procedural Background

Ortiz filed the instant Petition on November 2, 2007. (Doc. 1.) By Order dated November 15, 2007, service of the Petition was directed. (Doc. 3.) On December 5, 2007, Respondents filed a Response (Doc. 7) and supporting exhibits (Doc. 7-3). On

December 17, 2007, Ortiz filed his Reply. (Doc. 9.) On March 10, 2008, Respondents filed a Notice of Supplemental Authority bringing to the Court's attention the decision in *Edwin Nazario v. U.S. Parole Commission,* Civil No. 3:07-CV-0282, *slip op.* (M.D. Pa. Feb. 13, 2008) (Vanaskie, J.). (Doc. 10.) Ortiz filed a Response to the Notice of Supplemental Authority on March 31, 2008. (Doc. 11.) Accordingly, the Petition is fully briefed and ripe for review.

**III. Discussion**

In his Petition, Ortiz asserts that the Commission lacked authority to re-impose additional terms of special parole after it revoked his original term of special parole, and that, in doing so, it violated *Fowler*. (*See* Doc. 1 at 3-4.) He argues that the Commission erred in interpreting what he identifies as dicta in the United States Supreme Court's decision in *Johnson v. United States*, 529 U.S. 694 (2000) as overruling *Fowler* such that it is permissible for the Commission to reparole violators to successive terms of special parole after having revoked the original term of special parole. (*See id.* at 11.) He requests that this Court grant the Petition and credit him with his previously forfeited street time. (*See id.* at 17.)

Before embarking on an analysis of the claims raised in the instant Petition, we first will discuss the differences between traditional or regular parole and special parole, and discuss the *Fowler* decision in more detail.

6

An individual on traditional parole is considered to be serving his original sentence. *Fowler*, 94 F.3d at 839. Therefore, if the parolee violates a condition of parole, he can be returned to prison and required to serve the remainder of the unexpired term of his sentence. *Id.* This unexpired term would consist of the original term of imprisonment minus time served and the time the parolee spent serving his sentence on the street, *i.e.* "street time." *Id.* The credit that a parolee receives for street time is a "natural consequence of the concept that a parolee serves his or her time 'on the street.'" *Id.* (quoting *Evans v. U.S. Parole Comm'n*, 78 F.3d 262, 263 (7th Cir. 1996)). Therefore, traditional or regular parole is "'a conditional release from incarceration . . . prior to the expiration of the full term set by the sentencing court.'" *Id.* (quoting *Parry v. Rosemeyer*, 64 F.3d 110, 116 n. 10 (3d Cir. 1995)).

Unlike traditional or regular parole, the special parole statute was enacted by Congress in 1970 as part of a comprehensive drug control plan promulgated pursuant to the Controlled Substances Act of 1970. Pub.L. 91-513, Tit. II, 401(b), 84 Stat. 1250, codified at 21 U.S.C. § 841(b). Special parole is "special," in comparison to regular parole, in the following three (3) respects: "first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length

becomes a term of imprisonment. In other words, 'street time' does not count toward completion of special parole." *Fowler*, 94 F.3d at 840 (quoting *Evans*, 78 F.3d at 263).

As originally enacted, the statute authorizing special parole subjected offenders involved in the distribution or manufacture of certain enumerated drugs to a maximum sentence of fifteen (15) years of imprisonment, and if a prison sentence was imposed, to a mandatory three (3) year term of special parole. *Gozlon-Peretz v. United States*, 498 U.S. 395, 399 (1991). Specifically, Title 21 U.S.C. § 841 provided as follows:

> A special parole term . . . may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section shall be in addition to, and not in lieu of, any other parole provided for by law.

*Fowler*, 94 F.3d at 837 (quoting 21 U.S.C. § 841(c) (1982)). Although § 841 was repealed pursuant to the Comprehensive Crime Act of 1984, it still applies to criminal offenses committed prior to November 1, 1987. *Fowler*, 94 F.3d at 837 n.1. Therefore, it is applicable to Ortiz, who was sentenced in 1984. (*See* Doc. 7-3 at 4, Sentence Monitoring Computation Data.)

In *Fowler*, the Third Circuit Court of Appeals held that § 841 does not allow for

reimposition of special parole after the initial special parole term has been revoked. *Fowler*, 94 F.3d at 841. Rather, the Court determined that § 841(c) "clearly provides for the re-release of a special parole violator and permits him or her to serve a sentence of imprisonment on the street." *Id.* at 839. As such, the Court concluded that any additional parole term imposed following the revocation of special parole must be traditional parole. *Id.* at 840. In reaching this conclusion, the Court reasoned as follows:

> [S]ection 841(c) does not provide for a new term of *special* parole following revocation. Rather, the non-incarcerative custody authorized by § 841(c) is part of the sentence of imprisonment mandated upon the revocation of special parole; it is not in addition to it. Thus, it is traditional parole. Nowhere in § 841(c) has Congress vested a district judge or the Parole Commission with the authority to reimpose a special parole term.

*Id.* Having discussed the background necessary to dispose of the instant Petition, we now turn to the Petition itself.

### A. Standing

On March 10, 2008, Respondents submitted a copy of the decision in *Nazario v. U.S. Parole Commission* and stated that it is relevant to the instant case. (*See* Doc. 10.) In *Nazario,* the Court held that, because the petitioner had not violated his parole for reasons other than for a conviction for which a term of imprisonment may be imposed, and therefore, the imposition of subsequent periods of special parole had not

9

yet had any effect on the length of his sentence, he lacked standing to litigate the issue as to whether special parole can be re-imposed after an original special parole term is revoked. (*See Nazario v. U.S. Parole Comm'n*, Civil No. 3:07-CV-0282, Doc. 30.)

However, the Court in *Nazario* observed that the petitioner in that case would sustain an injury "only if parole is revoked in the future for reasons that would not result in the loss of street time were his parole characterized as 'traditional' or 'regular.'" (*See Nazario v. U.S. Parole Comm'n.*, Civil No. 3:07-CV-0282, Doc. 30 at 4.) As pointed out by Ortiz in his response to Respondents' Notice of Supplemental Authority, his special parole was revoked for reasons that would not result in the loss of street time if he were on traditional or regular parole. (*See* Doc. 11 at 3-4.) Rather, his parole was revoked in each instance for administrative violations of parole. Because Ortiz would not have lost street time if he had been on traditional or regular parole at the time of these violations, he has standing to litigate the issue presented in the instant case as to whether additional terms of special parole can be re-imposed after the original term has been revoked. Having determined that Ortiz has standing to pursue the instant action, we now will analyze the merits of his Petition.

**B.     Merits Analysis**

Ortiz claims that the Commission lacked authority to re-impose special parole after it revoked his original special parole term and that its action in doing so violated

10

*Fowler*. (*See* Doc. 1.)

In responding to the claims raised in the Petition, Respondents contend that Petitioner's reliance on *Fowler* is misplaced because the United States Supreme Court's holding in *Johnson* "implies that a revoked term of special parole, like supervised release, also may survive to be served out as special parole." (*See* Doc. 7, Response, at 12.) Therefore, Respondents argue that the Commission acted within its authority when it re-imposed subsequent terms of special parole after revoking Ortiz's original term.

In *Johnson*, the Supreme Court held that a district court has the authority pursuant to 18 U.S.C. § 3583(e)(3) to re-impose a term of supervised release to follow a term of imprisonment imposed as a result of a violation of conditions of supervised release. *Johnson*, 529 U.S. at 713. The *Johnson* Court recalled the pre-Guidelines practice with respect to probation and parole, and in doing so, observed that the supervised release provision is similar to the former parole scheme. *Id.* at 710-11. The Court further observed that, like the supervised release statute, 18 U.S.C. § 3583, the former parole scheme also used the word "revoke" repeatedly in setting out the consequences of violating parole conditions. *Id.* at 711. The Court then noted that "there seems never to have been a question that a new term of parole could follow a prison sentence imposed after revocation of an initial parole term." *Id.* The Court

11

elaborated on that point in the following footnote:

> The same is true of special parole, part of the required sentence for certain drug offenses. Though the special parole statute did not explicitly authorize reimposition of special parole after revocation of the initial term and reimprisonment, the Parole Commission required it. See 28 CFR § 2.57(c) (1999). Some courts have recently decided that this regulation is inconsistent with 21 U.S.C. § 841(c)(1982 ed.), see *e.g.*, *Evans v. United States Parole Comm'n*, 78 F.3d 263 (C.A.7 1996), but this does not affect the backdrop against which Congress legislated in 1984 [whereby the parole system was replaced with supervised release].

*Id.* at 712 n.11. Respondents argue that the holding in *Johnson* "implies that a revoked term of special parole, like supervised release, also may survive to be served out as special parole." (*See* Doc. 7 at 12.) Respondents explain their argument as follows:

> Although the Supreme Court's holding in Johnson is limited to the proposition that, under § 3583 (as originally enacted), 'district courts had the authority to order terms of supervised release following imprisonment,' the Johnson Court also struck down by implication the analytical basis for the circuit decisions, including Fowler, which had applied the previous majority rule regarding revocation of supervised release to the context of special parole.

(*See id.*) Respondents also argue that, because *Johnson* overruled the Third Circuit's prior interpretation of the supervised release statute in *United States v. Malesic*, 18 F.3d 205, 206 (3d Cir. 1994), in which the Court held that a district court cannot re-impose a term of supervised release under § 3583 after the original term has been revoked, and the analysis of the special parole statute in *Fowler* is based on the

12

*Malesic* Court's interpretation of § 3583, which now has been overruled, Ortiz's reliance on *Fowler* is misplaced. (*See id.* at 14-15.)

At least one court has held that *Johnson* overruled the line of cases upon which *Fowler* was based. *See Rich v. Maranville*, 369 F.3d 83 (2d Cir. 2004). Even though it appears that the reasoning in *Johnson* undermines *Fowler*, *see e.g. Hall v. U.S. Parole Comm'n*, No. 07-3448, 2008 WL 700966 at *3 (E.D. Pa. Mar. 13, 2008), and therefore, it is possible that the Third Circuit eventually may overrule *Fowler*, it has not yet done so, and therefore, this Court is bound to follow *Fowler* in this case. *See United States v. Mitlo*, 714 F.2d 294, 298 (3d Cir. 1983) (holding that a Third Circuit decision not overruled by the Supreme Court remains binding on courts in the Third Circuit); Internal Operating Procedures of the United States Court of Appeals for the Third Circuit (2002), Rule 9.1 (stating precedential decisions of the Third Circuit are binding on subsequent panels unless overruled by the Court en banc). In addition to the *Hall* case, *supra*, other courts in the Third Circuit also have determined that *Fowler* remains controlling law.[4] *See Bing v. Schultz*, No. 07-0643, 2008 WL 163689

---

[4]Although no other court in this District has decided a petition like the one in the instant case on the merits, at least three similar petitions have been filed. One of these petitions was the petition filed in the *Nazario* case, which already has been discussed, and which was not decided on the merits because the Court determined that the petitioner lacked standing to pursue his claims. *See Nazario v. U.S. Parole Commission,* Civil No. 3:07-CV-0282, *slip op.* (M.D. Pa. Feb. 13, 2008) (Vanaskie, J.)  The same determination was made in an earlier case, *Corbin v. Nash*, Civil No. 3:03-CV-1378 (M.D. Pa. Oct. 7, 2003) (Kosik, J.), based on the Court's observation that,

(continued...)

(D.N.J. Jan. 14, 2008); *U.S. v. Burgos*, No. 06-3563, 2008 WL 533802 (E.D. Pa. Feb. 26, 2008); *Caraballo v. U.S. Parole Comm'n*, No. 06-1798, 2007 WL 2702942 (E.D. Pa. Sept. 13, 2007); *U.S. v. Rivera*, No. 06-3781, 2007 WL 954725 (E.D. Pa. Mar. 28, 2007); *U.S. v. Farrow*, No. 06-2922, 2007 WL 707362; *Marker v. Reilly*, No. 02-7702, 2003 WL 22859554 (E.D. Pa. Dec. 1, 2003). Therefore, we will grant the instant Petition in accordance with *Fowler.*

## IV.  Conclusion

Based on the foregoing, we shall grant the Petition for Writ of Habeas Corpus and direct that this matter be remanded to the United States Parole Commission for further proceedings consistent herewith. Specifically, the Commission shall recalculate Ortiz's maximum release date in accordance with *Fowler* within sixty (60) days, and if it determines that it does not wish to impose a term of traditional parole,

---

[4](...continued)
"[e]ven if Corbin were on regular parole as opposed to special parole (that is - - the USPC had no authority to reimpose a second 'special parole' term), he still would have lost his street time." (*See Corbin*, Civil No. 3:03-CV-1378, Doc. 10 at 7.)

Finally, in *Cordero v. Martinez*, Civil No. 4:08-CV-0390 (M.D. Pa. May 29, 2009) (Mannion, M.J.), the Magistrate Judge issued the following recommendation: "[s]ince *Fowler* prohibits the reimposition of a term of special parole after the first term of special [parole] has been revoked, and is binding precedent of the Third Circuit, it is recommended that the petitioner's habeas petition be granted and the case be remanded to the Commission for recalculation of the petitioner's release date." (*See id.,* Doc. 18.) However, following the filing of the Report and Recommendation, the respondents filed a Notice of Mootness indicating that the Commission had restored the petitioner's previously forfeited street time, and therefore, his petition had been rendered moot. (*See id.*, Doc. 19.) The Court subsequently dismissed the petition as moot. (*See id.*, Doc. 21 (McClure, J.).)

14

Ortiz should be released from custody. An appropriate Order will enter.